Matter of Sofer (2023 NY Slip Op 00033)

Matter of Sofer

2023 NY Slip Op 00033

Decided on January 05, 2023

Appellate Division, First Department

Per Curiam 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: January 05, 2023
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick,J.P.,
Troy K. Webber
Anil C. Singh
Saliann Scarpulla
Manuel J. Mendez, JJ.

Motion No. 2022-03963 Case No. 2022-00928 

[*1]In the Matter of Tzadok Sofer, an Attorney and Counselor-at-Law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Tzadok Sofer (OCA Atty. Reg. No. 2567626), Respondent.

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on August 16, 1993.

Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Jun H. Lee, of counsel), for petitioner.
Thomas J. Foley, Esq., for respondent.

Per Curiam 

Respondent Tzadok Sofer was admitted to the practice of law in the State of New York by the First Judicial Department on August 16, 1993. At all times relevant herein, respondent maintained an office for the practice of law within the First Judicial Department.
On or about March 7, 2022, the Attorney Grievance Committee (Committee) filed a notice of petition and petition of charges pursuant to Judiciary Law § 90(2) and the Rules for Attorney Disciplinary Matter (22 NYCRR) § 1240.8 seeking an order that respondent be disciplined for professional misconduct related to his representation of six clients with regard to their immigration matters, particularly in filing asylum applications and/or cancellation of removal relief. On April 22, 2022, respondent served the Committee with an answer denying the charges.
By joint notice of motion dated October 6, 2022, the Committee and respondent ask this Court to suspend him for one year and until further order of this Court, pursuant to 22 NYCRR 1240.8(a)(5), based upon the stipulated facts and consent of the parties. The motion is supported by a joint affirmation which contains a statement of facts, conditional admissions, factors in aggravation and mitigation, and agreed upon discipline (22 NYCRR 1240.8[a][5][i]). The motion is accompanied by respondent's affidavit acknowledging his conditional admission of stipulated facts, his consent to the
agreed upon discipline, which he has freely and voluntarily given, and his full awareness of the consequences of such consent (22 NYCRR 1240.8[a][5][iii]).
The stipulation of facts recites that in November 2012, OD retained respondent and paid him $5,000 to legalize his immigration status. Respondent did not enter into a written retainer agreement or letter of engagement as required pursuant to 22 NYCRR 1215.2. Respondent filed an affirmative asylum application on behalf of OD but failed to advise him of the risk of being placed in removal proceedings by filing such an application. After an asylum interview, OD was referred for removal proceedings. Thereafter, respondent appeared at a Master Calendar hearing and filed a cancellation of removal application but did not obtain documents to support the filing. In September 2016, the court denied the cancellation of removal relief and OD was ordered deported.
In June 2015, TA retained respondent and paid him $6,450 to legalize his immigration status. Respondent did not enter into a written retainer agreement or letter of engagement as required pursuant to 22 NYCRR 1215.2.
Respondent filed an affirmative asylum application on behalf of TA but did not advise him of the reason he was filing the application or of the risk of being placed in removal proceedings by the filing. Respondent also failed to obtain documents to support the filing of the asylum application. After an asylum interview, TA was placed in removal proceedings. [*2]At a Master Calendar hearing, respondent advised the court that his office would be filing a cancellation of removal application, but he did not obtain documents to support the application. In November 2018, TA terminated respondent's legal services.
In July 2015, AC retained respondent to legalize her immigration status and paid him $2,950 of the $5,000 fee that was charged. Once again respondent failed to enter into a retainer agreement or letter of engagement as required pursuant to 22 NYCRR 1215.2. In January 2016, respondent filed an affirmative asylum application but did not advise AC that he was filing the application or of the risk of being placed in removal proceedings by the filing. Respondent also did not obtain documents to support filing the application. In December 2018, AC terminated respondent's representation.
In March 2016, RRS retained respondent and paid him $7,500 to legalize his immigration status. Respondent did not enter into a retainer agreement or letter of engagement as required pursuant to 22 NYCRR 1215.2. Respondent filed an affirmative asylum application for RRS but did not advise him that he was filing the application, the reason it was being filed, or of the risk of being placed in removal proceedings by filing the application. Respondent also failed to obtain documents to support the application. After an asylum interview, RRS was placed in removal proceedings. In June 2018, RRS terminated respondent's representation.
In early 2014, CSA retained respondent and paid him $7,500 to legalize his immigration status. Respondent did not enter into a retainer agreement or letter of engagement as required pursuant to 22 NYCRR 1215.2. Respondent filed an affirmative asylum application on behalf of CSA without advising him that he was filing the application or of the risk of being placed in removal proceedings by filing the application. Respondent also did not obtain documents to support the application. After an asylum interview, CSA was placed in removal proceedings. At a Master Calendar hearing, respondent filed a cancellation of removal application but did not obtain documents to support the application. At an individual hearing, respondent accepted voluntary departure on behalf of CSA.
ARA was arrested and detained when he illegally entered the U.S. by crossing the U.S./Texas border. While ARA was detained, his cousin and brother retained respondent to file a defensive asylum application on his behalf; respondent was paid $6,000. Respondent did not enter into a retainer agreement or a letter engagement with ARA as required pursuant to 22 NYCRR 1215.2, nor did he file an asylum application or a notice of appearance. ARA was ordered removed in absentia because neither he nor respondent appeared. From July 2018 until November 2019, ARA tried to communicate with respondent about the status of his case, but respondent did not reply to his requests for information. Nor did respondent advise ARA that he had been ordered removed [*3]in absentia. Between May 2018 and October 2019, respondent did little to no work in pursing ARA's asylum claim.
Respondent conditionally admits to the facts stipulated herein and acknowledges that they establish violations of the Rules of Professional Conduct (22 NYCRR 1200.0). Respondent conditionally admits that by failing to advise OD of the risk of being placed in removal proceedings by filing an asylum application, he failed to explain a matter to the extent reasonably necessary to permit the client to make an informed decision regarding the representation in violation of rule 1.4(b). Respondent conditionally admits that by failing to advise TA and RRS of the reason an asylum application was being filed on their behalf and the risk of being placed in removal proceedings by filing the application, respondent failed to explain a matter to the extent reasonably necessary to permit his clients to make an informed decision regarding the representation in violation of rule 1.4(b) (2 counts). Respondent conditionally admits that by failing to advise AC and CSA that their asylum application was being filed for them and the risk of being placed in removal proceedings by filing an asylum application, respondent failed to explain a matter to the extent reasonably necessary to permit the client to make informed decision regarding the representation in violation of rule 1.4(b) (2 counts). Respondent conditionally admits that by failing to keep ARA reasonably informed about the status of his case, respondent failed to communicate with his client in violation of rule 1.4(a)(3); by failing to perform little to no work on ARA's matter between May 2018 and October 2019, respondent neglected a legal matter in violation of rule 1.3(b); by failing to obtain documents to support filing asylum applications for TA, AC, RRS and CSA, he failed to provide competent representation in violation of Rule 1.1(a) (4 counts); and by failing to obtain documents to support filing a cancellation of removal application for OD, TA and CSA, he failed to provide competent representation in violation of Rule 1.1(a) (3 counts). Finally, respondent conditionally admits that by charging six clients (OD, TA, AC, RRS, CSA, ARA) a legal fee in excess of $3,000 without entering into a required letter of engagement or retainer agreement, pursuant to 22 NYCRR 1215.2, respondent engaged in conduct that is prejudicial to the administration of justice in violation of rule 8.4(d) (6 counts).
The parties have stipulated to the following factors in aggravation. In 2012, respondent was issued three letters of admonition involving immigration matters. One admonition was issued based on findings that he neglected an asylum application, failed to communicate with a client, and failed to promptly refund the unearned part of a fee until after the Committee's inquiry. Another admonition found he neglected a legal matter by failing to communicate with a client about the status of an asylum application, and [*4]the third admonition found that he engaged in dishonesty, fraud, deceit, or
misrepresentation by including false information on an asylum application and intentionally prejudiced and damaged his client during the professional relationship by submitting a letter to the Immigration Court about the matter. Respondent was issued another letter of admonition in 2014, which was based upon a finding that he engaged in conduct that reflected adversely on his fitness as a lawyer by initially advising the Committee that he had represented a client when he submitted court filings and later denying such representation. A further agreed upon aggravating factor is that all of respondent's clients herein are considered vulnerable individuals since they are immigrants who have little or no understanding of English.
In terms of mitigation, the parties note that respondent, who is 70 years old, has been practicing immigration law for 29 years. In 2018, he merged his law firm with an experienced and organized immigration attorney. Respondent has never fully recovered from the death of his son in 2011. Over time he has learned that his grief caused him to lose focus on his clients and because of his busy schedule (voluminous court appearances on a daily basis and managing a law practice) he did not attend regular mental health appointments but rather sought help and counseling from his rabbi. Respondent has suffered from his own health issues which took him away from his office responsibilities and rendered him unable to manage his client's expectations  in March 2017, respondent underwent a coronary artery bypass surgery and following his hospitalization his ability to work was limited for a significant period of time; and in July 2018, he underwent additional heart surgery, however, with the help of medication his health is presently stable.
While respondent's misconduct consisted of, inter alia, neglect, failure to communicate, failure to provide competent representation to his immigration clients, failure to obtain documents to support his clients' applications and charging a legal fee in excess of $3,000 without entering into a required letter of engagement or retainer agreement with those clients, and his disciplinary history involves some of the same type of misconduct as in this matter, he has expressed remorse for his conduct, his misconduct did not involve misrepresentation or deceit, he has substantially reorganized his practice and has now merged his firm with an experienced immigration law firm. Respondent has sought help and counseling related to the death of his son, and the medical problems he suffered from during some of the time at issue have stabilized with the help of medication. Moreover, respondent states that he understands that his actions may have led to adverse consequences for his clients and expresses remorse for his actions (see Matter of Berkman, 32 AD3d 39 [1st Dept 2006]; Matter of Forman, 117 AD2d 71 [1st Dept 1986]).
The Court agrees [*5]with the parties, that, in light of respondent's admitted misconduct, the aggravating and mitigating factors presented, and the relevant case law, a one-year suspension is the appropriate sanction under the circumstances (see Matter of Segal, 123 AD3d 260 [1st Dept 2014]; Matter of Aranda, 32 AD3d 58 [1st Dept 2006]; Matter of Kuhnreich, 21 AD3d 1 [1st Dept 2005]).
Accordingly, the motion for discipline by consent should be granted, and respondent is suspended from the practice of law in the State of New York for a period of one year. The petition of charges should be denied as moot.
All concur.
IT IS ORDERED that the parties' joint motion for discipline by consent pursuant to 22 NYCRR 1240.8(a)(5) is granted, and respondent Tzadok Sofer is suspended from the practice of law in the State of New York for a period of one year, effective February 6, 2023, and until further order of this Court, and
IT IS FURTHER ORDERED that the Attorney Grievance Committee's petition of charges is denied as moot, and
IT IS FURTHER ORDERED that, pursuant to Judiciary Law § 90, during the period of suspension, respondent Tzadok Sofer is commanded to desist and refrain from (1) the practice of law in any form, either as principal or agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and
IT IS FURTHER ORDERED that respondent Tzadok Sofer shall comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), which are made part hereof; and
IT IS FURTHER ORDERED that if respondent Tzadok Sofer has been issued a secure pass by the Office of Court Administration, it shall be returned to the issuing agency.
Entered: January 5, 2023